UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO: 3:21-30114

| | |
|---|---|
| GUISTINA APRILEO,<br>    Plaintiff,<br>v.<br>CITY OF SPRINGFIELD, et. al.,<br>    Defendants | DEFENDANTS'MEMORANDUM OF LAW<br>IN SUPPORT OF THEIR MOTION FOR<br>SUMMARY JUDGMENT |

**I.    <u>Standard for Summary Judgment</u>**

Summary judgment should be granted if there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986). "The plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 322 (1986). In this way, the Summary Judgment standard mirrors the

standard for Fed.R.Civ.P. 50(a) Judgment as a Matter of Law.  <u>Celotex Corp.</u>, 477 U.S. at 323,

quoting Anderson, 477 U.S. at 250. In ruling on a motion for summary judgment, the Court must

review the facts in a light most favorable to the non-moving party and draw all reasonable

inferences in favor of the non-moving party. <u>LeBlanc v. Great American Ins. Co.</u>, 6 F.3d 836,

841 42 (1st Cir. 1993). However, in opposing a motion for Summary Judgment, the nonmoving

party may not rest upon the bare allegations contained in the Complaint; indeed, the nonmoving

party must affirmatively set forth facts demonstrating the existence of a genuine, triable issue.

<u>Perez De La Cruz v. Crowley Towing & Transportation Co.</u>, 807 F.2d 1084, 1086 (1st Cir.1986).

**II.    <u>Argument</u>**
**A.    <u>The Heck Doctrine Precludes Plaintiff's §1983 Excessive Force Claim Given Its</u>**
**<u>Implicit Challenge to the Validity of Plaintiff's Plea</u>**

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court established a seminal

doctrine: a § 1983 suit for damages is not viable if its success would "necessarily imply" the

invalidity of a conviction or the duration of a sentence unless the conviction is voided first. Thore v. Howe, 466 F.3d 173, 179 (1st Cir. 2006) (quoting Heck, 512 U.S. at 487). This rule serves twin interests: it avoids duplicate litigation over issues like probable cause and guilt and prevents conflicting judgments arising from the same set of facts. DeLeon v. City of Corpus Christi, 488 F.3d 649, 655 (5th Cir. 2007) (quoting Speiser, Krause & Gans, American Law of Torts §28:5, p. 24 (1991)). Here, Heck mandates judgment against the Plaintiff for her excessive force claim.

    1. **Plaintiff's Plea under M.G.L. c. 276 §87[1] Constitutes a Conviction for Heck Analysis**

A prerequisite for Heck preclusion is a prior criminal conviction of the §1983 plaintiff. Various adjudicative outcomes can trigger Heck, including agreements to pre-trial probation under M.G.L. c. 276 §87. Roesch v. Otarola, 980 F.2d 850, 852 (2d Cir. 1992), is instructive; the court barred a §1983 false arrest claim when the plaintiff accepted pretrial probation—this did not amount to a favorable termination. Similarly, in Gilles v. Davis, 427 F. 3d 197, 208-12 (3rd Cir. 2005), a probationary program, which allowed for the expungement of the underlying criminal charge upon completing a probationary term, did not qualify as a favorable termination. Pleas made under Alford, pleas of nolo contendere, or pleas leading to deferred adjudication are also subject to Heck preclusion. Havens v. Johnson, 783 F.Supp.2d 776, 784 (10th Cir. 2015); Salcedo v. Dudley, 629 F.Supp.2d 86, 102 (D. Mass. 2009).

Two separate District Courts in this District have followed Heck's reasoning and holding, in cases where disposition on the underlying criminal charges resulted in pretrial probation. Cardoso v. City of Brockton, 62 F. Supp. 3d 179 (2014) (Stearns, J.) ("Cardoso I") and Cardoso v. City of Brockton, 62 F.Supp. 3d 185 (2015) (Stearns, J.) ("Cardoso II") (dismissing Fourth

---

[1] Defendants' SOF at ¶¶12-17

Amendment false arrest and common law malicious prosecution claims against police officer after finding that plaintiff's acceptance of pre-trial probation did not amount to 'favorable' termination of criminal charges) and <u>Kennedy v. Town of Billerica</u>, 2014 WL 4926348, * 2-3. (O'Toole, J.) (granting defendant police officer's JNOV motion on §1983 claim for false arrest where plaintiff had accepted a pretrial probation disposition because "acceptance of [pretrial probation] did not imply that his arrest had been made without probable cause").

In <u>Cardoso</u>, the defendant City of Brockton police officer testified he arrested plaintiff for disorderly conduct after plaintiff ran a stop sign and became disruptive and verbally abusive while receiving a traffic citation. <u>Cardoso I</u>, 62 F. Supp. at 183-84. Plaintiff's "version of the arrest differed dramatically" as he alleged the officer falsely arrested him without probable cause because he was of Cape Verdean background and because plaintiff had filed a complaint against another City police officer. <u>Id</u>. Similar to the Plaintiff in the case at bar, Cardoso brought claims against the individual police officer alleging violations of the Fourteenth Amendments, 42 U.S.C. § 1983, violations of the Massachusetts State Civil Rights Act, G.L. c. 12 §11I, and intentional infliction of emotional distress. <u>Id</u>. at 186.

In its initial decision, <u>Cardoso v. City of Brockton</u>, 62 F.Supp. 3d 179 (2014) ("Cardoso I"), the Court, O'Toole, J., denied the police officer's summary judgment motion as to the false arrest and malicious prosecution claims, but granted the motion to all remaining claims. <u>Id</u>. at 184. In so doing, the Court reasoned that genuine issues of material fact existed as to whether the false arrest occurred, requiring those claims to be resolved by the jury as the finder of fact. <u>Id</u>. However, several months later, in "<u>Cardoso II</u>," the Court granted the police officer's summary judgment motion as to the §1983 claim for false arrest and malicious prosecution claim when the defendant supplemented his filings with evidence that the underlying disorderly conduct charge

had been disposed of with nine months of pretrial probation. <u>Cardoso v. City of Brockton</u>, 62 F. Supp. 3d 185 (2015). The Court held that the acceptance of the pretrial probation barred the claims because "a disposition of pre-trial probation does not amount to a 'favorable' termination of [plaintiff's] criminal charges necessary to enable his civil suit against [the defendant] to proceed." <u>Cardoso II</u>, at 186 citing <u>Gilles v. Davis</u>, 427 F. 3d 197, 211 (3d Cir. 2005). Pre-trial probation, the Court said, is a "court supervised compromise . . .[that] constitutes an unfavorable period of judicially imposed limitations on freedom in which the probationer's violation of the program's terms may result in criminal prosecution." <u>Id</u> at 187 citing <u>Singleton v. City of New York</u>, 632 F. 2d 185 (2d Cir. 1980).

In <u>Kennedy v. Town of Billerica</u>, 2014 WL 4926348 the Court employed the same line of reasoning following a plaintiff's verdict on his §1983 claim for false arrest against a police officer. <u>Kennedy</u>, 2014 WL 4926348, *2-3. After the verdict, the defendant police officer moved for a JNOV, alleging that the plaintiff's entrance into a state court pretrial diversion program following the underlying arrest barred his §1983 claim. <u>Id</u>. Citing to <u>Heck</u>, supra, the Court found that "while the criminal charges were ultimately dismissed, the dismissal, which followed the successful completion of a period of supervised probation, was not one that was consistent with the innocence of the accused," and held that it barred his §1983 false arrest claim and granted the JNOV motion. <u>Id</u>.

In the case at bar, it is undisputed that the Plaintiff was charged and prosecuted by the Hampden County District Attorney's Office for assault and battery upon a police officer. <u>Defendant's SOF at</u>¶¶ 9, 12-17. Plaintiff had competent counsel represent her on the underlying criminal matter. <u>Id.</u> Plaintiff accepted a disposition of three months pretrial probation pursuant to M.G.L. c. 276 § 87 and following its completion, the case was dismissed. <u>Id</u>. Accordingly, her

acceptance of pretrial probation bars all claims against the Defendants arising out of the arrest. As the Court found in <u>Kennedy</u>, "The acceptance of [pretrial probation] did not imply that his arrest had been made without probable cause." <u>Kennedy</u>, at *2. By "agreeing to such a such a disposition, [he] avoids the possibility of a formal guilty finding, [and] even if he also avoids the necessity of formally admitting that the facts of the case are sufficient to support such a finding, he also foregoes a formal finding that the arrest lacked probable cause." <u>Id</u>.

### 2. <u>Given the Plaintiff's Criminal Plea Pertains to the Identical Incident Underpinning Her §1983 Excessive Force Claim, Heck Preclusion Applies</u>

In reviewing whether Heck bars a §1983 excessive police force claim, the Court gauges the connection between the §1983 claim and the conviction. <u>Thore</u>, 466 F.3d at 179 (quoting <u>Heck</u>, 512 U.S. at 486, n.6). As <u>Thore</u> elucidates, it's essential to discern whether the plaintiff's success would "negate an element of the offense of which he was convicted." <u>Id</u>. Where a court determines that a §1983 excessive force claim would negate a plaintiff's criminal conviction, <u>Heck</u> mandates dispositive relief against the plaintiff.

This principle was evident in cases like <u>Havens</u>, 783 F.Supp.2d at 783-85; <u>DeLeon</u>, 488 F.3d at 656-57; <u>Stone vs. Wall</u>, D.R.I., No. CA 11-127L (Mar. 12, 2015); <u>Masterson</u>, 2011 U.S. Dist. LEXIS 6974, *12-6; and, <u>Statchen v. Palmer</u>, 2009 U.S. Dist. LEXIS 84169, *14-5, aff'd 623 F.3d 15 (1st Cir. 2010)). In each, the claimant's excessive force allegations contradicted either their own admissions or their criminal convictions. Nevertheless, a §1983 plaintiff is not automatically precluded from pursuing an excessive force claim due to a related conviction, even when the event involved a physical encounter with law enforcement. Both <u>Havens</u> and <u>Thore</u> showcase this. In <u>Havens</u>, an excessive force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer, and the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for

force had disappeared. 783 F.3d at 782. Similarly, in Thore, the Court clarified that even if the defendant was convicted of assault on a police officer, it does not necessarily bar a § 1983 claim of excessive force as a matter of law. 466 F.3d at 180.[2]

Yet, when a plaintiff asserts excessive force but denies guilt in the incident leading to their conviction, Heck bars the claim.[3] An "officer authorized to make an arrest may use 'such force as is reasonably necessary to effect the [lawful] arrest." Julian v. Randazzo, 380 Mass. 391, 396, (1980). A plaintiff cannot legally repudiate their role in the incident and simultaneously lodge an excessive force claim, such a stance inherently challenges the legitimacy of the preceding conviction. See Masterson v. Grant, 2011 U.S. Dist. LEXIS 6974 (E.D. Va. 2011), See also Havens, 783 F.3d at 783-84.

In Havens, where the § 1983 plaintiff was convicted via an Alford plea of attempted first-degree assault of a police officer, the Tenth Circuit noted that the substance of the plaintiff's complaint alleged no wrongdoing or culpability by the plaintiff, in contravention of his conviction:

> Havens' plea [for attempted first-degree assault] is incompatible with his § 1983 claim. His complaint did not allege, and his opening brief does not argue, that [Detective] Johnson used excessive force in response to an attempted assault by Havens. Rather, he contends that Johnson's use of force was unreasonable because ... he did nothing wrong and did not intend or attempt to injure Johnson. This version of events could not sustain the elements of attempted first-degree assault ... and the factual basis for Havens' plea.

Id. at 783. Heck accordingly precluded the § 1983 claim of excessive force. Id. at 783-84.

---

[2] The First Circuit's use of italics suggests that only in a rare instance will a plaintiff avoid Heck preclusion when, as here, a § 1983 plaintiff, convicted of an assault-related offense, alleges excessive police force. See id. The First Circuit also noted that "[j]ust as it is true that a § 1983 excessive force claim after an assault conviction is not necessarily barred by Heck, it is also true that it is not necessarily free from Heck." 466 F.3d at 180.

[3] Finality of convictions, including plea agreements, is a long-standing, well-recognized policy. See Olsen v. Correiro, 189 F.3d 52, 69 (1st Cir. 1999) ("Absent a showing that a plea was in some way constitutionally infirm, parties must be held to the terms of the plea so as to ensure society's interest in the integrity of the system of compromise resolution of criminal charges"). A criminal defendant cannot be permitted to obtain the benefit of a plea bargain, then commence a subsequent § 1983 suit, alleging excessive police force arising from the very incident giving rise to conviction, when such a claim is grounded upon a profession of innocence contradicted by the conviction.

A similar Heck-preclusion result entered in <u>DeLeon</u>, 488 F.3d at 656-57, where the plaintiff's complaint "... maintains that he [plaintiff] did nothing wrong, that he simply defended himself, against mace, baton, and then gun, as the violence escalated." 488 F.3d at 656. "DeLeon still thinks he's innocent. His federal complaint contradicts his confession in Texas court, belying any suggestion on appeal that he has accepted his conviction for aggravated assault ..." <u>Id</u>. at 657. That contradiction compelled Heck preclusion. <u>Id</u>. A similar Heck-preclusion result entered in <u>Stone</u>, D.R.I., No. CA 11-127L (Mar. 12, 2015), and <u>Masterson</u>, 2011 U.S. Dist. LEXIS 6974, *12-6.

In this case, like the §1983 claims found defective as a matter of law in <u>Havens</u>, <u>DeLeon</u>, <u>Stone</u>, and <u>Masterson</u>, the Plaintiff's claim arises from the very same incident underlying her convictions for assault and battery on a police officer and resisting arrest - the physical altercation with Defendant Officers. <u>SOF at ¶¶6-8</u>. Further, like the unsuccessful plaintiffs in those cases, who, like the instant Plaintiff, were each convicted of assault-related charges against law enforcement, the Plaintiff inappropriately maintains her lack of culpability in this suit, despite her criminal disposition, which assault-related convictions are akin to those giving rise to <u>Heck</u> preclusion in <u>Havens</u>, <u>DeLeon</u>, <u>Stone</u>, and <u>Masterson</u>.

Plaintiff alleges that "... [Defendant Officers] proceeded to place the Plaintiff…in a forced arm bar breaking the Plaintiff's elbow in the process ..." <u>Complaint, ¶13</u>, and "…he pulled me out of the stairs…he pushed me down, he forced me down… they put cuffs on, but I don't know why I went to jail. Why?" <u>Deposition at p. 77 ¶¶9-18.</u> The Plaintiff's pleading does not aver any other instances of alleged excessive force and she also made the admission that after her arrest no other instances of any force was used by Defendant Officers. <u>Admissions at 9.</u>

To iterate, the Plaintiff's narrative depicts a continuous violent encounter with unwarranted police aggression. However, this portrayal starkly contrasts with her assault-related criminal disposition, evidencing the force used by the officers was in reaction to her actions. Analogous to the plaintiff in Havens, 783 F.3d at 783, she sidesteps her established criminal actions in her complaint, presenting no alternative scenario aligning with her convictions. This divergence is crucial: her stance in the §1983 claim essentially negates her assault and battery on the Defendant Officers and her act of resisting arrest and assault and battery. Plaintiff cannot, as a matter of law, enter a plea for those offenses; obtain the benefit of the plea, including, among other things, pretrial probation pursuant to M.G.L. c. 276 §87 which avoided the prospect of incarceration; and then file a §1983 suit that rewrites the very incident giving rise to her plea.

In conclusion, the Plaintiff's self-inflicted alignment with Heck's purview necessitates judgment against her on her claim of excessive police force as a matter of law.

### 3. **Policy Considerations**

This result is in accord with the policy considerations outlined by the Heck Court and adopted by the Second Circuit in Roesch v. Otarola, 980 F.2d 850, 852-53 (1992) (federal courts should avoid having parallel civil and criminal trials on whether plaintiff's activity constituted disorderly conduct or protected First Amendment activity and could result in conflicting resolutions arising from the same conduct) and the Third Circuit in Gilles v. Davis, 427 F. 3d 197, 209 (3rd Cir. 2005) (courts should not permit criminal defendants to maintain civil rights actions after taking advantage of pretrial probation because the savings in resources from dismissing the criminal proceedings would be consumed in resolving the constitutional claims). In his Kennedy decision, Judge O'Toole also cited policy considerations and "an interest in upholding plea bargaining and compromise in the §1983 setting" while citing to another First

8

Circuit case, <u>Olsen v. Correiro</u>, 189 F. 3d 52, 69 (1st Cir. 1999):

> Here [the plaintiff] pled nolo as part of a plea bargain with the prosecution. . . By
> pleading nolo, [he] agreed to a sentence of time already served as the punishment
> for the manslaughter conviction. While he did not admit to committing
> manslaughter, he did, by pleading nolo, agree that both his sentence and
> conviction were valid. . . [Permitting] a party who does not contest the court's
> authority to punish him to bring subsequent proceeding in which he is able to
> claim that his punishment was improper would undermine the finality of plea
> bargains and jeopardize society's interest in a system of compromise resolution of
> criminal cases.

<u>Kennedy</u>, at *3.

This principle echoes loudly in the present case. When one accepts pretrial probation, as the Plaintiff did here, they neither negate the existence nor challenge the veracity of probable cause for their arrest. Hence, to uphold the integrity of both civil and criminal judicatures, it's paramount this motion be granted.

**B.  <u>The Individual Defendants are Entitled to Summary Judgment on Count II</u>**
    **1.  <u>Plaintiff's Claims Against Clapprood, Castro and Bacis Fail as a Matter of
Law</u>**

The summary judgment record contains no evidence that any Defendant other than Officer Ward either participated in the Plaintiff's arrest or used force against her. <u>SOF</u> ¶8. Nevertheless, Plaintiff seeks redress from every individual Defendant, charging them with neglecting "to prevent or stop the excessive force used by Officer Richard Ward." <u>Complaint at ¶25</u>.

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under 42 U.S.C. § 1983 for his nonfeasance." <u>Gaudreault v. Salem</u>, 923 F.2d 203, 208 n.3 (1st Cir. 1990). However, it is vital to underscore that an officer cannot be impugned for neglecting to intervene unless presented with a viable window of opportunity to deter a colleague from exercising excessive force. This sentiment is mirrored in both <u>Calvi v. Knox County</u>, 470 F.3d 422, 428 (1st Cir.

2006) and Gaudreault, 923 F.2d at 207-208, where the court repudiated liability for failure to intervene when the aggression was fleeting and fellow officers lacked a tangible chance to restrain the implicated officer.

Plaintiff stated that she told Defendant Ward that the family dispute had ceased, and he was no longer needed. SOF ¶6. Plaintiff recounts that Defendant Ward, without prior indication of force, employed a forceful arm bar, leading her to the ground and subsequently arresting her. SOF ¶7. Given the swift nature of the alleged force application and the absence of forewarning about any forceful intent prior to the arrest, it remains untenable to assert that any individual Defendant was furnished with a tangible opportunity to mediate and impede Defendant Ward's purported excessive force. This resonates with Davis v. Rennie, 264 F.3d 86, 98 n. 10 (1ˢᵗ Cir. 2001), where the court found no grounding for liability based on non-intervention, emphasizing that the assault by the co-officer was ephemeral, lasting mere seconds. Plaintiff's "failure to intervene" claim must therefore be dismissed.

### 2. **Officer Ward's Force Used Was Reasonable**

Claims asserting excessive force are fundamentally anchored in the Fourth Amendment's guarantee against unreasonable seizures of an individual. Raiche v. Pietroski, 623 F.3d 30, 36 (1ˢᵗ. Cir. 2010). This principle establishes that any claim, whether concerning deadly force or otherwise, which alleges law enforcement officers exercised excessive force during an arrest, should be scrutinized under the Fourth Amendment's standard of "reasonableness" rather than the "substantive due process" approach. Graham v. Connor, 490 U.S. 386, 395, (1989).

To assess the reasonableness of the force used, courts weigh three pivotal factors: (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officer or others;" and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, at 396.

The test of reasonableness is one of "objective reasonableness." <u>Graham</u> at 397. The central question is whether a sensibly trained officer, faced with similar circumstances, would believe their actions adhered to clearly established law. <u>Estate of Bennett v. Wainwright</u>, 548 F.3d 155, 168 (1st Cir. 2008). The metric for this determination hinges on whether a logical factfinder could determine that an officer's behavior was so inappropriate that no other reasonable officer would have acted similarly. <u>Norton v. City of South Portland</u>, 831 F.Supp.2d 340, 363 (D. Me. 2011).

It's pivotal for the court to acknowledge that its assessment of the force's reasonableness incorporates the events leading up to the actual use of force. <u>Young v. City of Providence</u>, 404 F.3d 4, 22 (1st Cir. 2005). This perspective becomes particularly salient given that in the current case, Plaintiff was not just arrested, but also legally charged, and subsequently entered a plea in court. <u>Defendants' SOF at ¶¶12-17</u>. Furthermore, as evidenced where Defendant officers, in uniform, responded to a domestic disturbance call (<u>Defendants' SOF at ¶4</u>), the circumstances preceding the intervention directly influence the nature and level of force applied. Force was also only used during the arrest. <u>Defendants' SOF at ¶10</u>. The Court should also be cautious when retrospectively dissecting an on-the-ground officer's judgment of a situation's threat level. <u>Ryburn v. Huff</u>, 132 S. Ct. 987, 992 (2012). As elucidated by <u>Graham</u>, evaluations of reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," appreciating the rapid, high-stakes decisions officers often confront. <u>Graham</u>, 490 U.S. at 396-97.

In light of the aforementioned, when considering the Plaintiff's legal arrest, subsequent charges, and plea in court alongside the fact that Defendant officers restrained the Plaintiff during her arrest (<u>Defendants' SOF at ¶¶7, 10, 12-17, 30, 32</u>), the court is asked to weigh the

severity of the crime, any immediate threat the Plaintiff might have presented, and any potential

resistance. Given the rapid, high-stakes decisions officers frequently face in the field, and the

totality of the circumstances presented, the use of force in this instance can be objectively viewed

as reasonable. Accordingly, in deference to the protections afforded to officers under the Fourth

Amendment, and based on the established jurisprudential framework, the Defendants

respectfully submit that the Plaintiff's excessive force claim should be dismissed.

### C. **Defendant, City, is entitled to Summary Judgment on Count III**
####     1. **City's Established Policies and the Insufficiency of Plaintiff's Monell Claim**

Under Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.

Ct. 2018 (1978) and its progeny, a plaintiff seeking to prove municipal liability under Section

1983 must demonstrate that a municipal custom or policy caused a plaintiff's injury. A Section

1983 action based on municipal policy is viable where "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

officially adopted or promulgated by that body's officers." Monell, 436 U.S at 690.

The Supreme Court has reiterated the first element of a "policy or custom" as the basis

for municipal liability in a case brought under 42 U.S.C. § 1983: "In sum, in Monell the Court

held that "a municipality cannot be held liable" solely for the acts of others, e.g., "*solely* because

it employs a tortfeasor." 436 U.S., at 691, 98 S. Ct. 2018. But the municipality may be held liable

"when execution of a government's policy or custom … inflicts the injury." Id., at 694, 98 S. Ct.

2018. Los Angeles County, Cal v. Humphries, 131 S. Ct. 447 (2010) (emphasis retained).

In addition to "official policies" a plaintiff may also point to a municipality's custom or

practice that is "so well settled as to constitute a 'custom or usage' with the force of law." Id at

691. A Monell claim based on failure to train, [supervise, investigate, control and discipline]

requires a plaintiff to demonstrate that the "municipalities' failure to train its employees in a

relevant respect. . . amount[ed] to 'deliberate indifference to the rights of persons with whom the [untrained employees] came into contact.' " Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 109 S. Ct. 1197 (1989)).

      In short, "the municipality's failure to train or supervise its police officers only becomes a basis for liability when 'action pursuant to official municipal policy of some nature caused a constitutional tort.' " Kennedy v. Town of Billerica, 617 F.3d 520, 531-32 (1st Cir., 2010) (quoting Monell, 436 U.S. at 691). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipal—y--a 'policy' as defined by our prior ca—s--can a city be liable for such a failure under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). By way of definition, a policy is instituted when the decision maker who has the final authority to establish policy for the municipality on that topic issues an official proclamation, edict or policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84, (1986) (explaining that "official policy" specifically refers to the "formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be [consistently] followed under similar circumstances ...."). Actions considered custom, on the other hand, lack the requisite formal approval by the decision maker, but are "so widespread as to have the force of law." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 404, reh'd denied, 520 U.S. 1283 (1997).

      Essentially, the "official policy" requirement exists to distinguish the acts of the municipality from the acts of municipal employees, and it is intended to limit municipal liability "to action for which the municipality is actually responsible." Pembaur, 475 U.S. at 479. The "official policy" element thus safeguards the municipality from liability under § 1983 "unless ... the existence of an unconstitutional municipal policy," can be proven. St. Louis v. Prapotnik, 485 U.S. 112, 128 (1988).

To sustain a claim against Springfield under a failure to adequately train its police officers Plaintiff must show "that the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and that "the identified deficiency in a city's training program [is] closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 388, (1989); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Additionally, Plaintiff must show the alleged inadequacies in its training program rose to the level of deliberate indifference. Id. Deliberate indifference means the City disregarded a known or obvious risk of serious harm. Id. See Brown, 520 U.S. at 407-08; see also Swain v. Spinney, 117 F.3d 1, 11 (1st Cir.1997); Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 28.

Plaintiff has failed to present facts sufficient to meet the standard for a 1983 Monell claim. As to training, the summary judgment record has no facts upon which a jury could find that the training offered to the Springfield Police officers was deficient, never mind that it rose to the level of deliberate indifference. The record demonstrates adequate training in the areas highlighted by Plaintiff's complaints. Specifically, when the Plaintiff was asked to provide particular facts supporting her claim in Count III that the City 's official policies or customs from the Police Department 'armed her, and to identify any documents or statements that back such a claim of deliberate indifference, she responded with the following:

> …Plaintiff would refer the Defendant to the factual allegations outlined in her complaint and the defendants own written policy and procedures including, but not limited to; Municipal Police Training Committee Veteran Officer: In-Service Curriculum September 2017 "Domestic Violence and Sexual Assault," Springfield Police Department General Order "Use of Force" Issued 01/01/2015, and De-escalation customs when responding to domestic disturbances described by Officer Thalio [sic] Castro in April 24, 2023 deposition.

Defendants' SOF at ¶¶26-28

The legal framework established by <u>Monell</u> and its successors makes clear that for a municipality to be held liable, the plaintiff must identify a direct connection between a municipal policy or custom and the alleged constitutional violation. In this case, the City had well-established policies and training guidelines. Specifically, Springfield endorsed the Municipal Police Training Committee's in-service curriculum on "Domestic Violence and Sexual Assault" from September 2017, had an explicit "Use of Force" policy issued on January 1, 2015, and maintained de-escalation customs for domestic disturbances, as detailed in Officer Thalia Castro's deposition from April 24, 2023. Despite this clear evidence of the City's proactive measures to guide and train its police officers, the Plaintiff claims harm based on these policies and customs. However, the evidence in the record does not support the contention that these established policies and customs of Springfield were either constitutionally insufficient or directly responsible for any alleged harm to the Plaintiff. Therefore, absent a demonstrable link between Springfield's policies or customs and the claimed injury, the Plaintiff's assertion against Springfield, even in the light of Monell's precedent, remains unsubstantiated for a successful § 1983 municipal liability claim. <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978).

### 2. <u>No Constitutional Injury</u>

Liability against the City is premised on <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), which held that a municipality could be liable in certain cases when its agents and employees committed constitutional violations, but not under a theory of *respondeat superior. Id.* at 691–95. Instead, it is only when the governmental employees' "execution of a government's policy or custom ... inflicts the injury" and is the "moving force" behind the constitutional violation that a municipality can be liable. <u>Id</u>. at 694. Assessing liability against the City requires two basic elements: first, that plaintiff's harm was caused by a constitutional

violation, and second, that the City be responsible for that violation, an element which has its own components. <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120 (1992).

Drawing from the comprehensive analysis articulated above, the individual Defendants are meritorious of summary judgment in their favor. As substantiated by the <u>Defendants' SOF at ¶¶4-11</u>, the force deployed during the Plaintiff's arrest was justifiable and circumspect given the circumstances. The arrest was not merely lawfully executed, but was substantiated by probable cause and aligns coherently with the Plaintiff's eventual criminal disposition. <u>Defendants' SOF at ¶¶12-17</u>

This case's pivotal essence lies in the absence of a constitutional transgression by the individual Defendant officers. If the officers did not infringe upon the Plaintiff's civil rights, it fundamentally nullifies the prospect of holding the Defendant City accountable based on a <u>Monell</u> claim. Supporting this stance, <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986) firmly established that absent a constitutionally injurious action by a police officer, the underlying municipality cannot be held liable. This position was further reinforced in de <u>Feliciano v. de Jesus</u>, 873 F.2d 447, 449 (1st Cir.), cert. denied, 493 U.S. 850 (1989) which posited that the city's liability cannot be ascertained devoid of a constitutional violation by its officers.

### D. <u>Negligence Claims Fail as a Matter of Law</u>
#### 1. <u>Negligence-Based Claims Cannot be Maintained Against Public Employees Acting Within the Scope of their Employment.</u>

The Plaintiff's negligence claim fails against the individual Defendants due to it being barred, as they were all public employees acting pursuant to their duties as a Springfield police officers. See, <u>Complaint at ¶8 ("Defendants, Officer[s]… were dispatched to the property…for a report of a disturbance…")</u>. Under the act, "public employees are immune from suit based on allegedly negligent conduct. Rather, liability for the negligent acts of a public employee committed within the scope of employment is visited upon the public employer, and not the

employee." Farrah ex rel. Estate of Santana v. Gondella, 725 F.Supp.2d 238, 246 n. 9

(D.Mass.2010); M.G.L. c. 258 § 2. Therefore, judgment should enter for the individual

Defendants.

### 2.  The City Cannot be Liable for Intentional Torts of its Employees.

The Plaintiff's negligence count fails because she cannot adduce any evidence of

negligent conduct by any individual Defendants or the City. Rather, the Plaintiff only makes

allegations of intentional conduct. The Plaintiff's negligence claim is therefore barred by MTCA,

which exempts public employers, such as the City, from liability for claims of intentional torts

by its employees. M.G.L. c. 258, § 10(c); Sheehy v. Town of Plymouth, 948 F. Supp. 119, 122

(D. Mass. 1996); Smith v. Massachusetts Bay Transp. Auth., 462 Mass. 370, 371 (2012). When

there's no separate negligent conduct alleged, claims tied to intentional actions, like assault by

officers, are barred.  Titus v. Town of Nantucket, 840 F. Supp. 2d 404, 411 (D. Mass. 2011).

Therefore, judgment should enter for the City.

### 3.  Any Claim Against the City for Negligent Training and Supervision Fails

If Plaintiff's negligence claim is based on a negligent training and supervision theory, it

should also be dismissed on substantive grounds. Plaintiff's claim of negligent training should be

dismissed because, as explained above, Plaintiff proffers no evidence demonstrating that the

training of the City's officers was deficient, while the City has provided affirmative evidence that

the training of all its officers met or exceeded state-law requirements. "[C]ompliance with a

statute or regulation [is] prima facie evidence of due care." Parker v. Town of Swansea, 270

F.Supp.2d 92, 102 (D.Mass. 2003). As plaintiff has provided no evidence rebutting the City's

evidence that its officers' training exceeded statutory mandates, plaintiff cannot establish that the

City breached its duty to train its police officers, and this claim should therefore be dismissed.

See Parker, 270 F.Supp.2d at 102 ("in the absence of any evidence offered by [plaintiffs] that the

Town failed adequately to train its officers, and in the face of evidence of the officer's training in compliance with the requirements of state statutory regulations, [plaintiffs] fail to show a breach of any duty of the Town"); Rochleau v. Town of Millbury, 115 F.Supp.2d 173, 179 (D.Mass. 2000, Gorton, J.) (dismissing claim that Town failed to train its officers in providing medical care to detainees, where plaintiff produced no evidence that such training was not provided, and Town presented evidence that it complied with state requirements relating to the training of officers in first aid and CPR); see also Tambolleo v. Town of West Bovlston. 34 Mass.App.Ct. 526, 531 (1993).

Similarly, Plaintiff has offered no evidence to establish the tort of negligent supervision, which requires proof that the City (1) knew or should have known that the officers had a proclivity to commit misconduct; and (2) failed to take corrective action. See Copithorne v. Framingham Union Hosp., 401 Mass. 860, 865, 520 N.E.2d 139 (1988).

Plaintiff's negligent supervision claim utterly fails, because, as explained above, the Defendant Officers' record is devoid of evidence that would put the City on notice that they might commit unconstitutional conduct and obligate it to take corrective action. As such, Plaintiff cannot establish a negligent supervision claim. Contrast Dobos v. Driscoll, 404 Mass. 634, 537 N.E.2d 558 (1989) (negligent supervision proved where defendant police officer had lengthy history of misconduct, including abuse of girlfriend; several instances of abusive behavior toward motorists; and disciplinary infractions that resulted in recommendation that officer have no direct contact with public).

### E.  Plaintiff has Failed to Prove a Claim for Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove:

1. The plaintiff suffered severe emotional distress; 2. the defendant's intent or knowledge of

causing such distress; 3. the defendant's conduct was outrageously beyond societal norms; and, 4. direct causation between the distress and the defendant's behavior. See Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 309-310 (D. Mass. 2011); Kennedy v. Town of Billerica, 617 F.    3d 520, 530 & n.9 (1st Cir. 2010). Emotional distress must be so severe that it's intolerable to a reasonable person, simple emotions like anger or sadness don't qualify. Kennedy, 617 F.3d.

Additionally, actions surpassing mere insults or offenses are required; malicious intent is not enough. Gouin v. Gouin, 249 F. Supp. 2d 62; Saltzman v. Town of Hanson, 935 F. Supp. 2d 328.

Given the facts, Plaintiff fails to meet these criteria. The Defendant Officers, in their uniforms, responded to a domestic disturbance. Defendants' SOF at ¶4. Allegations like the restraint of the Plaintiff during her arrest or comments about her mothering aptitude do not ascend to the rigorous standard of extreme and outrageous behavior. Defendants' SOF at ¶¶7, 30, 32. In scenarios where officers are discharging their duties as enforcers of the law, their actions cannot, as a legal precedent dictates, be considered "extreme and outrageous." Sietins v. Joseph, 238 F. Supp. 2d 366, 379 (D. Mass. 2003), (citing Sena v. Commonwealth, 417 Mass. 250, 264 (1994)). Furthermore, as to the element of causation, there's an absence of evidence linking the alleged emotional distress of the Plaintiff directly to the conduct of the Defendant Officers.

### F. Plaintiff's Massachusetts Civil Rights Act Claim ("MCRA") is Legally Insufficient Against All Defendants

Plaintiff's MCRA claim fails as a matter of law against all Defendants. To establish a claim under the MCRA, the Plaintiff must prove the following: 1. her constitutional or legal rights, protected either by the U.S. or Massachusetts, were either directly infringed upon or there was an attempt to infringe upon them; 2. infringement or attempted infringement was conducted through threats, intimidation, or coercion. Bally v. Northwestern Univ., 403 Mass. 713, 128 (1989); M.G.L. c. 12 §§ 11H and 11I. This sequence, as articulated by the MCRA, means that a

defendant's actions towards the plaintiff must possess the intent to compel the plaintiff to forfeit a constitutional right. The principle is distinctly highlighted in Bally v. Northwestern Univ., where the court emphasized the requirement of proving that rights were compromised "by threats, intimidation, or coercion." 403 Mass. 713, 715-16 (1989).

Importantly, a direct violation of one's rights, on its own, does not meet the MCRA criteria. As the Supreme Judicial Court elucidated in Longval v. Commissioner of Corrections, a direct violation without a secondary purpose (like threats, intimidation, or coercion) does not invoke the MCRA. 404 Mass. 325, 330 (1989). Drawing upon case law, in Goddard v. Kelley, the court found that a direct constitutional violation, such as false arrest or excessive force, cannot simultaneously satisfy the MCRA's distinct "threats, intimidation, and coercion" requirement. 629 F. Supp. 2d 115, 128-129 (D. Mass. 2009).

Applying the established precedents to the current situation, the Plaintiff's MCRA allegations echo those in Goddard. In that case, the court highlighted the absurdity of interpreting the MCRA to mean that an assault equates to compelling the plaintiff to forfeit their rights against excessive force, or a threat of arrest signifies compelling the plaintiff to waive their rights against false arrest. Id. at 129. Regrettably for the Plaintiff, her claims lack substantiation. The summary judgment record is barren of any evidence that suggests the Defendants employed threats, intimidation, or coercion to infringe upon her constitutional rights.

## III.    Conclusion
WHEREFORE, for the above stated reasons, the Defendants' Motion for summary judgment should be allowed and the claims dismissed.

Respectfully submitted,
The Defendants, City of Springfield,
Cheryl Clapprood, Jason Bacis, Thalia Castro,

Dated:  August 30, 2023

/s/ Tyler J. Kenefick
Tyler J. Kenefick, Esq. BBO#696304
Lisa C. deSousa, Esq. BBO#546115
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel: (413) 886-5205
tkenefick@springfieldcityhall.com
ldesousa@springfielcityhall.com

Defendant, Richard Ward,
by his attorney,

  /s/ Kevin B. Coyle
Kevin B. Coyle, Esq. BBO#103540
1299 Page Boulevard
Springfield, MA 01104
Tel:  (413) 787-1524
attycoyle@aol.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true copy of the within was this day served upon the parties via the Federal Court's ECF Notice and Delivery System. I am not aware of any party who is a non-registered participant, and therefore electronic filing is the sole means of service of this document.

Signed under the pains and penalties of perjury.

Dated:  August 30, 2023

/s/ Tyler J. Kenefick
Tyler J. Kenefick, Esq.

21