UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 3:21-CV-30114

GUISTINA APRILEO )
    Plaintiff )
 )
v. )
 )
CHERYL CLAPROOD, )
Individually and as Police )
Commissioner of the )
City of Springfield, )
OFFICER RICHARD WARD, )
OFFICER T. CASTRO, and )
OFFICER J. BACIS, Individually )
and as Police Officers of )
Springfield Police Department; and )
THE CITY OF SPRINGFIELD )
    Defendants )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

The standard for summary judgment requires a court to grant judgment only when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving party, and drawing all justifiable inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, (1986) (Citing Adickes v. S.H. Kress & Co., 398 U.S.

1

144, 158-59 (1970). A "genuine" issue is one that "properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. A "material" fact is one that "might affect the outcome of the suit under the governing law." Id. at 248. Thus, summary judgment should be denied if there is sufficient evidence such that a jury could return a verdict for the nonmoving party. Id. at 249 - 52.

The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he or she is therefore entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 250, 256; Celotex Corp. v. Catrett, 488 U.S. 317, 322 - 24 (1986); Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). If the movant satisfies this burden, then the nonmovant can only survive summary judgment by proffering evidence supporting the existence of a genuine issue of material fact to be resolved at trial. Donovan v. Agnew, 712 F.2d 1509, 1516 (1st Cir.1983). The adverse party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 250. When the nonmoving party bears the burden of proof on the merits, it is sufficient for the moving party to show an absence of evidence in support of the nonmoving party's case. Celotex, 477 U.S. at 325.

## ARGUMENT

**I. Plaintiff Disputes Officer Ward's Claim That His Force Was Reasonable and Defendants Are Not Shielded From Liability By The Heck Doctrine.**

**A. Officer Ward's Use Of Force Was Unreasonable**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."

2

Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002), citing Graham v. Connor, 490 U.S. 386, 394-95 (1989). A seizure is not unconstitutional unless it is reasonable. What is unreasonable or reasonable is determined by "…balance(ing) the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S., 1, 105 S. ct. 1694, 1699 (1985). (Quoting U.S. v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642 (1983)). "In conducting this balancing test, we are to consider 'the scope of the particular intrusion, and the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Gilmere v. City of Atlanta, 774 F.2d 1495, 1502 (11th Cir. 1985) (Quoting Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884 (1979)). The Court in Graham, *Supra*, held that the test of reasonableness is an objective one, without regard to the underlying intent or motivation of the officer. The proper question to be asked is "whether the officer's actions were objectively reasonable under the facts and circumstances confronting him." Graham, *supra*, 109 S.Ct. at 1872. In determining whether force used was reasonable, courts have given careful attention to the facts and circumstances of each particular case, including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, at 396. The test of reasonableness is one of "objective reasonableness." Graham at 397. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene. Id. at 394.

In the present case, Officer Ward employed excessive and unreasonable force against the Plaintiff by utilizing an outrageous and excessive degree of force, despite the absence of any justifying circumstances. On or about November 7, 2018, the Defendants were dispatched to the

3

premises located at 46 Alderman Street, Springfield, MA in response to Plaintiff's 9-1-1 call in which she reported an ongoing disturbance involving the Plaintiff's children. Upon arrival by Officer Richard Ward, it was evident that the dispute had already been resolved, with no ongoing disturbance. This conclusion is corroborated by the fact that Officer Castro and Officer Bacis were speaking with Plaintiff's children, and there was no signs of any disturbance. Rather than departing from the scene, or addressing the issue with the Plaintiff's children, Officer Ward proceeded to insult the Plaintiff's parenting abilities and forcibly entered her residence. Subsequently, Officer Ward proceeded to place Plaintiff in a forced arm bar maneuver, resulting in the fracture of her elbow.

Considering the factors established in <u>Graham,</u> it is evident that the severity of the alleged crime, which amounted to a disturbance involving Plaintiff's children, was minimal. It is crucial to underscore that upon the officer's arrival, the situation had already deescalated rendering the severity of the crime negligible.

The factor pertaining to whether the Plaintiff posed an immediate threat to safety of the officers or others similarly supports the Plaintiff's case. The Plaintiff neither possessed any weapons nor exhibited any aggressive or menacing behavior toward Officer Ward. His approach involved derogatory comments directed at the Plaintiff's parenting, to which the Plaintiff responded by requesting him to leave her home. Notably, there was no indication of violence or a threat to the Defendants or any other individuals within the residence. It is essential to highlight the significant disparity in physical stature between Officer Ward and Plaintiff, with Officer Ward testifying in his deposition that he is 6 foot, 245lbs and Plaintiff, in her exchanged medical records, show that she is 5'1" and weighed 130 lbs at the time of the incident . In light of the

Graham factors, from an objective reasonableness standard, Officer Ward's handling of this situation was not an appropriate response to the scene, at that moment.

Lastly, the final Graham factor, whether the Plaintiff is actively resisting arrest or attempting to evade arrest by flight, also weighs in favor of the Plaintiff. One of the disputed material facts is that Officer Ward did not inform the Plaintiff that she was under arrest until after Officer Ward applied the forced arm bar. By the time the Plaintiff was informed she was being arrested, she had already been forced into the arm bar and thrown on the ground. Additionally, there is no suggestion that the Plaintiff attempted to flee her own residence after she had been taken down by the Defendant, Officer Ward.

Consequently, with each of the Graham factors favoring the Plaintiff, it is unequivocal that Officer Ward employed excessive force in a situation where it was disproportionate. Plaintiff posed no threat to Officer Ward, or any of the other officers on the scene, and the Plaintiff neither resisted arrest nor attempted to flee her residence while the Defendants were present. Under these circumstances, it is indisputable that the level of force applied by Officer Ward was unreasonable.

**B. Heck v. Humphrey Does Not Preclude Plaintiff's Excessive Force And § 1983 Claims.**

The Defendants argue that they are entitled to summary judgment because Plaintiff is precluded under the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994), from recovering under § 1983. In Heck, the Supreme Court established that a § 1983 suit for damages is not viable if its success would "necessarily imply" the invalidity of a conviction or the duration of sentence unless the conviction is voided first. Thore v. Howe, 466 F.3d 173, 179 (1st

Cir. 2006). Defendant's further argue that <u>Heck</u> mandates judgment against the Plaintiff for her excessive force claim.

The language of the <u>Heck</u> doctrine does not prohibit legitimate civil claims that are separate and distinct from the validity of a criminal conviction. Therefore, Plaintiff's excessive force claim which resulted in serious injury, does not trigger the application of <u>Heck</u> since it is separate and distinct from her underlying criminal matter. The Plaintiff did not bring this cause of action to deny her culpability in her arrest on November 7, 2018. Rather, Plaintiff seeks damages from the treatment by the Defendants during and after her arrest, separately and distinct from her underlying criminal charge. Plaintiff was injured due to excessive force during her arrest. Defendant Officer Ward's unreasonable response to the situation at the Plaintiff's house caused the Plaintiff to be injured. Not only would the success of Plaintiff's excessive force not "necessarily imply" the invalidity of her underlying conviction, but it would also be wrong to apply the <u>Heck</u> doctrine so broadly as to deny persons injured as a result of excessive force by police officers from bringing forth claims for injuries sustained, which are separate and distinct from the arrest. The mere fact that the Plaintiff, at that moment, allegedly committed a crime (assault and battery on a police officer) does not grant authority to the arresting officer to then violate long-established policy and engage in the illegal use of excessive force. To allow otherwise would subject any arrestee to significant abuse in violation of their constitutionally protected rights.

Defendant alleges that the Plaintiff's claim arises from the very same incident underlying her conviction for assault and battery on a police officer and resisting arrest - the physical altercation with the Defendant Officers. This statement is conclusory as the order of events is still disputed and is material in the determination of this issue. Depending on whether the arrest

happened before or after the Plaintiff's injury could determine whether the injury sustained was separate and distinct from the arrest.

**C. Defendants, Springfield Police Department and the City of Springfield, did not implement their policies and procedures causing Plaintiff to be injured.**

Defendants claim that under Monell v. Department of Social Services of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978) and its progeny, a plaintiff seeking to prove municipal liability under Section 1983 must demonstrate that a municipal custom or policy caused a plaintiff's injury. A Section 1983 action is based on municipal policy is viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" Monell, 436 U.S. at 690.

To be successful in a section 1983 claim for failure to train, a plaintiff may allege that a failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and that "the identified deficiency in a city's training program [is] closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Young v. City of Providence ex re. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005). Deliberate indifference means the City disregarded a known or obvious risk of serious harm. Id.

In this case, Defendant Officer Ward, in his deposition, claims that all Springfield Police Officers have mandatory annual in-service training. Further, policies promulgated by the Springfield Police Department including, but not limited to, *Municipal Police Training Committee Veteran Officer: In-Service Curriculum September 2017 "Domestic Violence and Sexual Assault"* indicates on page 14 of this document, slide 3, it states, "the first responding officer sets the tone of the investigation which can directly impact the victim - positively or negatively." Defendant Ward, who is over 20 years in the service, presumably attends these

7

in-service training sessions annually. Despite attending these annual training sessions, Officer Ward used incendiary comments, such as calling the Plaintiff an "unfit mother" in his response to a domestic disturbance call. The City and the Police Department's policies and procedures are evidently not being implemented through the provided training programs. If these training sessions were sufficient in training officer Defendant Ward, this incident would not have happened. The failure to train its officers correctly amounted to a deliberate indifference to the rights of the plaintiff.

**II. Remaining Disputed Facts Regarding Defendant Officers Castro and Bacis' Acts and Omissions Indicate That Summary Judgment Is Not Warranted.**

Defendants Officer Thalia Castro and Jason Bacis wrongfully allege that the ruling in <u>Gaudreault v. Salem,</u> 923 F. 2d 203, 208 n.3 (1st Cir. 1990) and <u>Calvi v. Knox County,</u> 470 F. 3d 422, 428 (1st Cir. 2006), which created a standard that an officer cannot be impugned for neglecting to intervene unless presented with a viable window of opportunity to deter a colleague from exercising excessive force, applies here. Defendants argue that Defendant Ward's actions (putting the Plaintiff into a forceful arm bar and throwing her to the ground) lasted only mere seconds and it is untenable to assert that any individual was furnished with an opportunity to mediate and impede in Defendant Ward's excessive force.

This argument is based on conclusory factual statements and therefore does not meet the standard for summary judgment. To state differently, the Defendants wish to be dismissed from this case based upon statements of fact which have not been settled, and thus should be decided by the finder of fact. In the depositions of Officer Jason Bacis and Officer Thalia Castro, when asked to state the location of where the incident between Officer Ward and the Plaintiff occurred, both officers provided different answers. Officer Thalia Castro stated the incident happened on

the front porch and Officer Bacis could not recall. Further, when asked which officer arrived at the scene first, Officer Bacis stated Officer Ward entered the home of the Plaintiff first while Officer Castro stated that she arrived with Officer Bacis first, which is also the same testimony made by the Plaintiff in her deposition. The conflicting testimony regarding the timing and location of the facts puts the Officers' credibility in question. Therefore, under the standard of summary judgment, there are significant disputes as to the material facts regarding Officer Castro and Officer Bacis' involvement for a trier of fact to decide whether or not they should be impugned for negligence or not.

### A. Plaintiff has Established a Claim for Intentional Infliction of Emotional Distress

To establish a claim under Massachusetts law for intentional infliction of emotional distress, a plaintiff must prove: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, (3) that the plaintiff suffered severe emotional distress, and (4) that the actions of the defendant were the cause of the plaintiff's distress. Agis v. Howard Johnson Co., 371 Mass. 140, 145, 355 (1976).

When "Plaintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude the defendant's conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility." Alcorn v. Anbro Eng'r, Inc., 2 Cal.3d 493, 498, 86 Cal.Rptr. 88, 90, 468 P.2d 216, 218 (1970). When, "reasonable men could differ on these issues, we believe that 'it is for the jury, subject to the control of the court,' to determine whether there should be liability in this case." Agis v. Howard Johnson Co., 371 Mass. 140, 145,

355 (1976). Quoting, Restatement (Second) of Torts s 46, comment h (1965). Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145 (1974).

In the instant case, the Plaintiff has presented a compelling set of circumstances and facts that could reasonably lead the trier of fact to conclude that the conduct of the Defendants was extreme and outrageous. First, Officer Ward's apparent intent to inflict emotional distress on the Plaintiff, or at the very least, should have known emotional distress was likely to result from his actions. Prior to this encounter, law enforcement had conducted well-being and crisis checks on the Plaintiff and her children at their residence, given the children's documented mental health issues. The Defendants were responding to an alleged disturbance between her children, making it evidence that the situation was inherently stressful for all parties involved. Therefore, when Officer Ward disparaged the Plaintiff by advising her to "Kick her children out", and deeming her an "unit mother," he should have reasonably foreseen that such remarks would inflict severe emotional distress upon her. When combined with his physical assault on the Plaintiff, resulting in the fracture of her arm within the confines of her own home, it becomes unequivocal that any reasonable person would anticipate the victim to experience severe emotional distress.

Next, Officer Ward's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community. As previously noted, the Defendants were responding to a disturbance or domestic abuse call, indicating that they were entering a highly charged and sensitive family environment. Nevertheless, Officer Ward, when asked to leave the Plaintiff's residence due to Officer Ward's insult, and the fact that the officers were no longer needed. Officer Ward proceeded to physically assault her within the sanctity of her own home and in the presence of her children. Such conduct constitutes extreme and

outrageous behavior particularly within the context of law enforcement's duty to handle volatile situations with care and professionalism.

Lastly, it is apparent from the Plaintiff's documented medical history that she has indeed suffered severe emotional distress as a direct result of these events. The Plaintiff has consistently sought mental health treatment and medication since the incident involving Officer Ward, demonstrating a tangible impact on her well-being. She has missed work, experienced heightened anxiety, pervasive stress, frequent panic attacks, and significant disruption in her sleep patterns, all of which attests to the enduring psychological trauma inflicted upon her.

In light of these compelling arguments and the documented effects on the Plaintiff's mental health, there exists a compelling case that the Defendants' actions were not only extreme and outrageous but also led to substantial and demonstrable emotional distress on the part of the Plaintiff. At the very least, Plaintiff has alleged facts and circumstances which reasonable men could differ on the issue, and should be left up to a jury, subject to the control of the court to determine whether there should be liability in this case.

**CONCLUSION**

WHEREFORE, in viewing the facts in a light most favorable to the Plaintiff as the non-moving party, the Defendant's Motion for Summary Judgment should be DENIED as there exists multiple disputes of material facts in the present case that can only be resolved by a finder-of-fact.

The Plaintiff,

**Guistina Aprileo**

By her counsel,

By: */s/ Jason R. Herrick*
Jason R. Herrick, Esquire
Law Office of Jason R. Herrick, P.C.
BBO # 647446
10 School Street
Westfield, MA 01085
(413) 568-5200 Telephone
(413) 568-5255 Fax

## CERTIFICATE OF SERVICE

I certify that on September 21, 2023, Jason Herrick, counsel for Plaintiff, filed this Memorandum in Support to Plaintiff's Opposition to Defendant's Motion for Summary Judgment via the Federal Court's ECF Notice and Delivery System.

Counsel for Defendants
Lisa C. deSousa, Esq
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103

Tyler J. Kenefick, Esq
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103

Kevin B. Coyle, Esq.
1299 Page Boulevard
Springfield, MA 01104
attycoyle@aol.com

*/s/ Jason R. Herrick*
_____
Jason R. Herrick