UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GUISTINA APRILEO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 21-30114-MGM |
| v. | * | |
| | * | |
| CHERYL CLAPPROOD, RICHARD T. WARD, | * | |
| THALIA CASTRO, JASON BACIS, and | * | |
| CITY OF SPRINGFIELD, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER RE: REPORT AND
RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND MOTIONS TO STRIKE
(Dkt. Nos. 33, 39, 41, and 54)

August 6, 2024

MASTROIANNI, U.S.D.J.

Magistrate Judge Katherine A. Robertson has issued a Report and Recommendation which recommends the court deny Defendants' motions to strike and grant in part and deny in part Defendant' motion for summary judgment. (Dkt. No. 54.) Specifically, Judge Robertson recommends that the court grant Defendants' motion for summary judgment as to the negligence claim (Count I), the section 1983 claim against Jason Bacis for failure to intervene (Count II), the *Monell* claim against the City of Springfield and Cheryl Clapprood (Count III), the Massachusetts Civil Rights Act ("MCRA") claim (Count IV), and the intentional infliction of emotional distress ("IIED") claim against Bacis (Count V). However, Judge Robertson recommends the court deny Defendants' motion for summary judgment as to the section 1983 claims against Richard T. Ward for excessive force and Thalia Castro for failure to intervene (Count II), and the IIED claims against Ward and Castro (Count V).

Defendants filed a timely objection to Judge Robertson's Report and Recommendation. (Dkt. No. 55.) Defendants object to Judge Robertson's recommendation that the court hold the *Heck* doctrine is not a bar to Plaintiff's section 1983 claims. They also object to Judge Robertson's recommendation for the court to deny summary judgment as to Plaintiff's IIED claims against Ward and Castro. Plaintiff has not filed an objection to the Report and Recommendation.

The court agrees with the thorough and well-reasoned analysis presented in the Report and Recommendation. In particular, the court agrees the motions to strike should be denied under these circumstances, where Defendants have not been prejudiced by Plaintiffs' initial deficient Local Rule 56.1 statement. The court also agrees that the negligence claim is not viable in light of the Massachusetts Tort Claims Act and Plaintiff's failure to submit evidence of negligence;[1] the *Monell* claim fails due to Plaintiff's failure to submit evidence demonstrating deficient training or policies or similar constitutional violations; and the MCRA claim fails, as Plaintiff conceded she lacks evidence of threats, intimidation, or coercion.[2]

As to the section 1983 claims against Ward, Castro, and Bacis (Count II), Plaintiff alleges Ward employed excessive force against Plaintiff in connection with a domestic disturbance involving Plaintiff's children and that Castro and Bacis are liable for failing to intervene and stop Ward's excessive force. Following the encounter, Plaintiff was charged with resisting arrest, disorderly conduct, and assault and battery on a police officer. However, Plaintiff subsequently reached an agreement with the prosecutor to dispose the charges with a term of pretrial probation (requiring no admission to facts), after which the charges were dismissed. *See* Mass. Gen. Laws ch. 276, § 87.  In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement" are not

---

[1] In addition, Plaintiff failed to oppose summary judgment as to the negligence claim.

[2] Plaintiff also failed to oppose summary judgment as to the MCRA claim.

cognizable under § 1983 unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 & n. 6. Here, however, Plaintiff was never convicted and served no sentence; rather, her charges were ultimately dismissed after a successful pretrial probation diversion agreement. Thus, as Judge Robertson explains (and the majority of the circuits hold), "where the conditions of the agreement are satisfied and the criminal charges are dismissed without entry of conviction, *Heck* does not bar subsequent civil rights claims." (Dkt. No. 54 at 9 (quoting *Duarte v. City of Stockton*, 60 F.4th 566, 572 (9th Cir. 2023)).) Granted, as Judge Robertson recognized, the First Circuit has not yet decided this issue and some courts, including three in this district, hold otherwise. *See Cabot v. Lewis*, 241 F. Supp. 3d 239, 254 (D. Mass. 2017); *Cardoso v. City of Brockton*, 62 F. Supp. 3d 185, 186-87 (D. Mass. 2015); *Kennedy v. Town of Billerica*, 2014 WL 4926348, at *1-3 (D. Mass. Sept. 30, 2014). But this court is not persuaded that *Heck* bars suit in this situation.

      As the Supreme Court explained in *Heck*, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487. If, as Judge Robertson explained, there is no outstanding criminal judgment "that could be reversed or expunged, an individual in Plaintiff's position would have no way to obtain a favorable resolution of the criminal charges, leaving her no avenue for pursuing a civil action to vindicate the claimed violation of her civil rights." (Dkt. No. 54 at 14.) Having avoided any judicial finding of guilt and successfully achieving dismissal of the charges (without even admitting to sufficient facts regarding the charges), Plaintiff should not be in a worse position than individuals who were convicted (and thus have a means of invalidating that conviction). *See Commonwealth v. Millican*, 867 N.E.2d 725, 731 (Mass. 2007) ("A dismissal after successful completion

3

of pretrial probation without a change of plea under G.L. c. 276, § 87 . . . does not require a plea of guilty or an admission to sufficient facts to warrant a finding of guilty . . . ."); *Commonwealth v. Rodriguez*, 802 N.E.2d 1039, 1041 (Mass. 2004) (explaining that pretrial probation and dismissal of charges under Mass. Gen. Laws ch. 276, § 87 is not equivalent to a guilty plea for purposes of statute requiring judge to advise defendant of potential immigration consequences of conviction); *see also Tomashek v. Raleigh Cnty. Emergency Operating Ctr.*, 344 F. Supp. 3d 869, 874-75 (S.D.W. Va. 2018) ("Thus, a pretrial diversion agreement under West Virginia law is a means of *avoiding* a judgment of criminal guilt—the opposite of a conviction in a criminal action. Here, the plaintiff's criminal charges were dismissed after successful completion of the 90-day diversion program. An action cannot invalidate a conviction or sentence that does not exist.").

The courts which hold *Heck* does pose a bar in this circumstance go beyond the "literal language of the [*Heck*] opinion" and rely on the underlying purpose and rationale of *Heck*. *Cabot*, 241 F. Supp. 3d at 252; *see also Kennedy*, 2014 WL 4926348, at *1 ("While the criminal charges were ultimately dismissed, the dismissal, which followed the successful completion of a period of supervised probation, was not one that was 'consistent with the innocence of the accused,' a criterion generally required in order for a disposition to be considered a 'successful termination.' (quoting *Britton v. Maloney*, 196 F.3d 24, 31 (1st Cir. 1999) (addressing requirements for malicious prosecution claim under Massachusetts law))). But other Supreme Court decisions suggest the Court would not read *Heck* so expansively. In *Wallace v. Kato*, 549 U.S. 384 (2007), for example, the Court explained (in the statute of limitations context) that the *Heck* rule "is called into play only when there exists 'a conviction or sentence that has *not* been . . . invalidated, that is to say, an 'outstanding criminal judgment.'" *Id.* at 393; *see Duarte*, 60 F.4th at 571-73. Again, here, there is no outstanding criminal judgment, or even admission to facts, which is inconsistent with Plaintiff's § 1983 claim. Moreover, in *Thompson v. Clark*, 596 U.S. 36 (2022), the Court held that "[t]o demonstrate a favorable

termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction" and does not need to show the prosecution ended "with some affirmative indication of innocence." *Id.* at 39, 45. Although *Clark* did not directly address *Heck*, it signified a "soften[ing] [of] *Heck*'s preclusion effect." *Ricci v. Rhode Island*, 2023 WL 4686025, at 15 (D.R.I. July 21, 2023) (explaining that "there is reason to believe the *Cabot* Court would reach a contrary result, consistent with this Court, were it to consider the issue post-*Clark*"). In the end, this court concludes that *Heck* does not bar Plaintiff's § 1983 claims.[3]

Nevertheless, as Judge Robertson explained, the record does not support Plaintiff's § 1983 claim against Bacis for failure to intervene, "as there is simply no evidence in the record that he even witnessed Ward's use of force." (Dkt. No. 54 at 20.) As to Castro, however, "Plaintiff testified that Castro saw Ward implement the arm bar on Plaintiff and did not do or say anything to interrupt it, and Castro admitted to witnessing Ward bringing Plaintiff to the floor and handcuffing her." (*Id.*) The court agrees with Judge Robertson that, viewing this evidence in a light most favorable to Plaintiff, there is "a triable issue as to Castro's liability for failure to intervene." (*Id.*) As to Ward himself, the evidence is clearly sufficient to advance Plaintiff's claim of excessive force past summary judgment.

Defendants also object on the grounds that Plaintiff has not "substantiated a causal connection between any purported misconduct by the officers and her alleged emotional distress" for purposes of her IIED claim. (Dkt. No. 55 at 13.) This court does not agree.

> Under Massachusetts law, a plaintiff claiming intentional infliction of emotional distress must show that the defendant "intended to inflict emotional distress or that [she] knew or should have known that emotional distress was the likely result of [her]

---

[3] Because this court agrees with Judge Robertson's primary recommendation for the court to hold *Heck* poses no bar to Plaintiff's § 1983 claims, it need not address her alternative recommendation that, even if *Heck* applied under these circumstances, some of Plaintiff's theories of liability could survive summary judgment because they are not necessarily inconsistent with her criminal charges.

conduct"; that the defendant's "conduct was extreme and outrageous," such that it transgressed "all possible bounds of decency and was utterly intolerable in a civilized community"; that the conduct caused the plaintiff to suffer emotional distress; and that this distress "was severe and of a nature that no reasonable [person] could be expected to endure it."

*Sindi v. El-Moslimany*, 896 F.3d 1, 21 (1st Cir. 2018) (quoting *Agis v. Howard Johnson Co.*, 355 N.E. 2d 315, 318-19 (Mass. 1976)). Defendants argue that "[t]he record is devoid of any medical or psychological testimony or documentation that directly correlates the Plaintiff's emotional distress with the actions of Officers Ward and Castro." (Dkt. No. 55 at 13.) But there is no requirement under Massachusetts law for medical testimony in support of Plaintiff's IIED claim. *See Sindi*, 896 F.3d at 23 ("Samia counters that the verdict must nonetheless be overturned because Dr. Sindi failed to introduce any medical testimony in support of her claim. She is wrong: Massachusetts law allows recovery in emotional distress cases based exclusively on lay testimony."); *see also Poy v. Boutselis*, 352 F.3d 479, 485-86 (1st Cir. 2003).

Moreover, "causation is a factbound issue and, as such, is normally left to the trier." *Sindi*, 896 F.3d at 23. Here, the summary judgment record contains discovery responses in which Plaintiff asserts:

> Since this incident I have been suffering with increased anxiety, depression, and trauma. When Officer Ward called me an unfit mother to my face and in front of my children it was extremely hard to hear since I have been doing my best to keep my family safe and together. My children had to watch me get arrested that day. I was hurt and embarrassed. I do not trust the policy any longer and I become afraid and panicked at the sight of police passing my house.

(Dkt. No. 40-2 ¶ 13.) Plaintiff also asserted, in the same discovery responses, that she was out of work for four months as a result of the incident. (*Id.* ¶ 11.) As in *Ciolino v. Eastman*, 128 F. Supp. 3d 366, 379 (D. Mass. 2015), these discovery responses, along with the severity of Plaintiff's alleged injuries (including a fractured elbow), provide sufficient evidence to withstand summary judgment, in that a jury could infer that the conduct of Ward and Castro (in failing to intervene) caused

Plaintiff severe emotional distress. *See also Sindi*, 896 F.3d at 23; *Poy*, 352 F.3d at 486-86; *Dyer v. Steward Carney Hosp., Inc.*, 2021 WL 4554083, at *2-3 (D. Mass. Oct. 5, 2021).[4]

Accordingly, the court, upon *de novo* review, hereby ADOPTS the Report and Recommendation. As a result, the court denies Defendants' motions to strike (Dkt. Nos. 39, 41); grants Defendants' motion for summary judgment (Dkt. No. 33) as to the negligence claim (Count I), the section 1983 claim against Bacis for failure to intervene (Count II), the *Monell* claim against the City of Springfield and Clapprood (Count III), the MCRA claim (Count IV), and the IIED claim against Bacis (Count V); and denies Defendants' motion for summary judgment as to the section 1983 claims against Ward for excessive force and Castro for failure to intervene (Count II), and the IIED claims against Ward and Castro (Count V).

It is So Ordered.

                                                                             /s/ Mark G. Mastroianni
                                                                             MARK G. MASTROIANNI
                                                                             United States District Judge

---

[4] The court, however, agrees with Judge Robertson that the IIED claim against Bacis fails for the same reason that the section 1983 claim against him fails: there is no evidence that Bacis witnessed Ward's alleged excessive use of force.